**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| Bridgette Williams,<br><br>    Plaintiff,<br><br> vs.<br><br>Piedmont Airlines, Inc. and American Airlines Group, Inc.,<br><br><br>    Defendants. | Civil Action No. 3:21-cv-1918-MGL-PJG<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

## INTRODUCTION

Plaintiff Bridgette Williams (hereinafter, referred to as "Plaintiff"), by and through her undersigned attorneys, brings the causes of action of Section 1981 Race Discrimination/ Racially Hostile Work Environment, Race Discrimination in violation of the South Carolina Human Affairs Law, Age Discrimination in violation of the South Carolina Human Affairs Law, Disability Discrimination in violation of the South Carolina Human Affairs Law, Retaliation in violation of the South Carolina Human Affairs Law, Breach of Contract, Breach of Contract with Fraudulent Intent, and Workers' Compensation Retaliation, against Piedmont Airlines, Inc. and American Airlines Group, Inc., (collectively referred hereinafter, "Defendants"), based on the following allegations.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331, and 42 U.S.C. Section 1981. This court also has pendent and supplementary jurisdiction over so much of this action as is based on State law.

2. Plaintiff has satisfied all administrative requirements as a prerequisite to suit. On or about August 12, 2020, Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission and the U.S. Equal Employment Opportunity Commission against the Defendant, alleging that she was subjected to race, age, and disability discrimination and retaliation. Plaintiff timely received a right to sue from the South Carolina Human Affairs Commission on February 24, 2021. This lawsuit has been filed within 120 days of receiving such right to sue in accordance with State Law.

3. Venue is proper in the Columbia Division because the causes of action arose therein, the acts and practices complained of occurred there, and it is where the Defendant is situated, operates, and may be found.

## PARTIES

4. Plaintiff Bridgette Williams is a citizen and resident of Lexington County, South Carolina.

5. Defendant American Airlines is a commercial airline carrier organized and existing under the laws of the State of the Delaware, with its principal place of business located in Fort Worth, Texas.

6. Defendant Piedmont Airlines is a regional scheduled passenger airline carrier incorporated and existing under the laws of the State of Maryland that does business in the State of South Carolina, where it operates flights at the Columbia Metropolitan Airport located at 3250 Airport Blvd, West Columbia, SC 29170, in the County of Lexington.  Defendant Piedmont Airlines is a wholly owned subsidiary of Defendant American Airlines Group, Inc.

7. At all times relevant to this Complaint, the Defendants were acting by and through their agents, servants, employees and/or officers.

## STATEMENT OF CLAIM

8. Plaintiff is an African-American woman, and alleges that she is a victim of Defendants' unlawful and discriminatory practices. This occurred despite the Plaintiff performing her job duties with due diligence and to the best of her abilities.

9. Plaintiff contends that, at all times during the course of her employment with the Defendant, Plaintiff has performed her job admirably and in a satisfactory manner, and received satisfactory performance evaluations.

10. Plaintiff was hired by Defendants on or about October 6, 2014, as Customer Service Gate Agent at the Defendant Piedmont Airlines' Columbia Metropolitan Airport station.  Based on her exemplary performance, Plaintiff was promoted to Team Lead approximately six months after she began working for the Defendant.

11. In or around 2016, Plaintiff was promoted to the Customer Service Agent Supervisor position, based on her excellent performance record. In this position, she assisted in ensuring the safe and efficient operation of the airline by assigning responsibilities to employees under her supervision, coaching those employees regarding their daily assignments, and monitoring those employee's work and compliance with applicable rules and regulations. Plaintiff primarily

supervised the ticket counter and gate areas. Plaintiff remained in this position until her unlawful termination on or about February 20, 2020, despite Plaintiff performing her job duties admirably.

12.  Beginning in or around April 2019, Deidre ("Dede") Francis, a Caucasian woman, was hired by the Defendant to serve as the General Manager for the Defendant Piedmont Airlines' Columbia Metropolitan Airport location. Upon her hiring, Francis became one of Plaintiff's supervisors, to whom Plaintiff directly reported. Plaintiff also reported to Shift Managers Jennell Monsegue-Gamaldo, an African American woman, and Denise Pryde-McGee, a Caucasian woman.

13. Plaintiff contends that the Defendants subjected Plaintiff to a continuous pattern and practice of harassment and retaliation by and through the actions of their agent, Deidre Francis.

14. Specifically, Plaintiff noticed a keen difference in the manner in which she was treated by Francis in comparison with other similarly situated Caucasian counterparts in various respects.

15. For example, shortly after Francis became Plaintiff's supervisor, in or around April 2019, Francis displayed animus towards Plaintiff when Francis scolded Plaintiff for completing a shift-end report, as directed by Francis' supervisor and Regional Manager John Campbell. Campbell directed all supervisors, including Plaintiff, to complete and submit to management daily shift-end reports, however, Francis singled out and reprimanded only Plaintiff for submitting the report and unreasonably accused Plaintiff of "airing out the station's dirty laundry." Francis did not reprimand any of Plaintiff's similarly situated Caucasian colleagues in this manner.

16. Francis also treated Plaintiff less favorable than her similarly situated Caucasian colleagues by continually denying her requests for certain training dates, while accommodating the requests of other similarly situated Caucasian colleagues.

17.  Further, in or around May 2019, Francis decided to relocate the supervisors' offices, without notifying Plaintiff of her decision. Plaintiff only became aware of Francis' decision to relocate supervisors' offices when she arrived to work the morning after the move and discovered that her desk and belongings within her desk had been moved. Moreover, Plaintiff was unable to retrieve certain items after the move and was unable to access her computer for a short period of time after the move. Upon information and belief, none of her similarly situated Caucasian colleagues' desks or belongings were moved without the supervisors' notice, and none of their belongings were lost or misplaced.

18. Further, on or about June 2019, Plaintiff was exposed to the racially derogatory remarks of a fellow Customer Service Supervisor, Chad Lausman, a Caucasian man, who referred to a group of his subordinate African American employees as "monkeys." Plaintiff reported Lausman's racist remarks to Francis. Upon information and belief, Plaintiff asserts that no investigation was conducted by Francis or another agent of the Defendants, into Lausman's comments, and Lausman was never disciplined regarding his racially derogatory remarks.

19. In or about June 2019, Plaintiff applied to a Shift Operations Manager position. Plaintiff was imminently qualified for this job, as evidenced by the job description qualifications as she had the requisite background and supervisory experience.

20. Despite Francis' knowledge of Lausman's racially derogatory comments and animus towards African Americans, the Defendant hired Lausman for the Shift Operations Manager position. Upon information and belief, Plaintiff was more qualified for this position as she had experience managing more areas than Lausman, as Plaintiff supervised both the ticket counter and gate areas, and Lausman only supervised and was familiar with operations of the ramp area. Defendant's promotion of Lausman, a lesser qualified Caucasian male, who has been reported for having made racially derogatory remarks regarding African American employees, reflects Defendants' condonation of Lausman's racially hostile behavior. This further evidences Lausman's racially discriminatory intent towards Plaintiff.

21. Continuously, beginning in May 2019, Plaintiff complained to her Shift Supervisors, Denise Pryde McGee and Jennell Monsegue-Gamaldo regarding Francis inequitable treatment of Plaintiff, and her belief that Francis was treating her differently on account of her race. However, despite her numerous complaints, no actions were taken to escalate, address or investigate her complaints by Defendants' management.

22. Shortly after Plaintiff's complaints, and beginning around July 2019, Plaintiff was subjected to pretextual and retaliatory disciplinary actions. Plaintiff also noticed that she began to be treated differently than her similarly situated Caucasian colleagues with regard to such disciplinary actions.

23. On or about July 2019, Plaintiff was pretextually disciplined for violating procedures regarding the issuance of check. She was disciplined for violations on July 15, 2019, and July 31, 2019, instead of combining those corrective actions as one continuous violation.

24. On or about October 18, 2019, Plaintiff received a corrective action for causing damage to an aircraft. On this date, Plaintiff was undergoing training to work in the ramp area. While was

maneuvering an electronic cart to transport passenger bags to the aircraft, the cart malfunctioned causing her to strike the aircraft. Although Plaintiff explained to Francis that the electronic cart malfunctioned, Plaintiff was still issued a Level 3 Final Warning for this incident. In issuing this Final Warning Defendants skipped over the Level 2 correction action, and escalated the corrective action to a Level 3, in violation of Defendants' progressive disciplinary system.

25.  Around the same time period, a Caucasian male employee, Frank Nichols, caused damaged to aircraft equipment in violation of Defendants' policies. However, unlike with the Plaintiff, Nichols was never disciplined for this incident, thereby reflecting Defendants' inequitable treatment based on age, race, and Plaintiff's disability with regard to the application of their disciplinary policies.

26. On or about November 21, 2019, during her work shift, Plaintiff injured her back while assisting passengers with their baggage. Plaintiff received medical treatment for her work injury, and promptly reported the work injury to her supervisors pursuant to Defendants' workers' compensation policy. Plaintiff, upon information and belief, alleges that that the Defendants were on notice of and properly filed Plaintiff's workers' compensation claim in accordance with their workers' compensation policies and procedures.

27. Based on her back injury, Plaintiff's doctor ordered that she be placed on light duty work restrictions in which she was restricted from standing for excessive periods of time and heavy lifting. Plaintiff was placed on light duty restrictions for approximately four weeks.

28. During the period in which Plaintiff was placed on light duty restrictions, Plaintiff was ostracized by Francis and restricted from performing duties that were not prohibited by her light duty restrictions.  Specifically, Francis delayed cross training that other employees were allowed to undergo, despite the fact that such training would not violate her light duty restrictions. Also, during this time period, Plaintiff was further ostracized by Francis prohibiting Plaintiff from performing certain work duties that complied with her light duty restrictions.

29. Furthermore, during the period in which Plaintiff was on light duty restrictions, Defendants temporarily changed her work shift. Francis also began to closely monitor and restrict Plaintiff's overtime hours, to the exclusion of her similarly situated Caucasian employees.

30. From November to December 2019, Plaintiff complained to Pryde-McGee regarding Francis' discriminatory treatment based on race and disability of her during the period she was on light

duty restrictions; however, no actions were taken to escalate, address or investigate her complaints by Defendant's management.

31. Beginning in or around November 2019, Francis, upon her own initiative, started a mentorship program for younger, newly hired employees. Plaintiff, who was fifty years old at the time, was excluded from participating in this mentorship program as it was designated for younger employees, who were in their twenties or early thirties. Francis stated that the mentorship program was created to train the young employees to replace older supervisory employees.

32. On February 13, 2020, Plaintiff was suspended for allegedly violating the American Eagle Ground Operations Manual (EGOM) policy by not having wing walkers during a tail swap operation. Plaintiff was pretextually disciplined for this incident, despite the fact that another an employee, Dwayne Lewis, who was serving as the Acting Supervisor/ Trainer, was in charge of leading the operation. Nonetheless, Plaintiff was notified by Francis that she would be suspending Plaintiff pending an investigation into the incident, and escorted Plaintiff to gather her personal belongings and exit the Defendant's premises. During the suspension, Plaintiff was required to utilize her PTO and/or vacation leave to supplement her income, as the Defendants placed her on an unpaid suspension.

33. On or about February 20, 2020, Plaintiff received a phone call from Francis, in which Francis informed her that Defendants had decided to terminate Plaintiff's employment based on the findings the Defendants' investigation of the incident on February 13, 2020. Upon information and belief, the Defendants knowingly relied on the false and inaccurate statements of Francis, Lausman, and Regional Manager Brian Sanders, all Caucasian, who all misrepresented the facts of the incident on February 13, 2020, during their investigation. Upon information and belief, Defendants' grounds for termination were unsubstantiated, pretextual in nature and done to further discriminate against the Plaintiff and in retaliation for Plaintiff's protected complaints regarding the Defendants' discriminatory treatment on account of her race, age and disability, and her filing of a workers' compensation claim on or about November 21, 2019.

34. Believing that Defendants' termination was unsubstantiated, Plaintiff contacted Defendants' Human Resources Manager Sharon Custis, to request guidance on how to contest her termination. However, Custis failed to provide the requested guidance and direct Plaintiff to the Defendants' grievance procedure, and also failed to process her request as a grievance pursuant to the Defendants' grievance procedure, thereby depriving Plaintiff of her contractual grievance

rights under Defendants' handbook policy.

35. Upon information and belief, Plaintiff performed her job, with due diligence, despite being subjected to racial discrimination by Defendants. Defendants' discriminatory and retaliatory actions are in breach of their own policies and procedures thereby breaching Defendants' employment contract.

36. As a result of the Defendants' unlawful treatment, discriminatory and retaliatory acts, and breach of Plaintiff's contract, Plaintiff has suffered from anxiety, emotional distress, and psychological and financial harm and loss of her income.

## FIRST CAUSE OF ACTION
## RACE DISCRIMINATION/ RACIALLY HOSTILE WORK ENVIRONMENT PURSUANT TO SECTION 1981

37. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

38. Plaintiff is African-American, and is therefore, a member of a protected class on the basis of her race.

39. Plaintiff asserts that Defendants' adverse on the job treatment towards her was due to her race though Plaintiff followed Defendants' policies and procedures and complied with her contractual duties.

40. Defendants, by and through their agents and employees, racially discriminated against Plaintiff and created a racially hostile work environment when Defendants: (1) reprimanded Plaintiff for completing and submitting shift-end reports, as directed Defendants' management (2) denied Plaintiff a promotional opportunity, despite Plaintiff's being well-qualified for the position; (3) inequitably disciplined Plaintiff and subjected Plaintiff to a different set of protocols, rules, and treatment, compared her similarly Caucasian colleagues; (4) subjected Plaintiff to racially derogatory remarks made by her Caucasian coworker; (5) subjected Plaintiff to harassment through relocating and misplacing Plaintiff's belongings; and (6) rejected Plaintiff's training schedule requests, while accommodating such requests of other similarly situated Caucasian colleagues. Plaintiff's similarly-situated Caucasian co-workers were never subjected to such treatment.

41. Defendants, by and through their agents, further racially discriminated against Plaintiff by pretextually terminating her, after she complained about Defendants' discriminatory acts and fostering of a racially hostile environment.

42. Plaintiff contends that after she complained to Defendants' agents and employees, she was subjected to retaliation, ostracization, and targeting by Defendants, which culminated in her pretextual and unsubstantiated termination in breach of Plaintiff's contract with Defendants.

43. By failing to protect Plaintiff from racial discrimination, Defendants acted with malice and reckless indifference concerning the federally protected rights set out under 42 U.S.C. § 1981.

44. Further, Defendant violated 42 U.S.C. § 1981 by allowing racial discrimination to exist in the workplace which violates the clear mandate of 42 U.S.C. § 1981.

45. Defendants' wrongful actions as set forth, constituted a racially discriminatory and racially hostile work environment for Plaintiff.  Defendants violated 42 U.S.C. § 1981 by allowing and perpetuating a racially discriminatory environment to exist in the workplace against Plaintiff.

46. Defendants and their agents' and employees' racial discrimination against Plaintiff have caused, continues to cause, and will further cause Plaintiff to suffer substantial damages for pecuniary loss, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, other nonpecuniary losses, actual and punitive damages. Defendants, through their agents' and employees' racial discrimination against Plaintiff, has caused, continues to cause, and will further cause Plaintiff to suffer substantial damages for pecuniary loss, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, other nonpecuniary losses, actual and punitive damages.

## SECOND CAUSE OF ACTION
## RETALIATION IN VIOLATION OF 42 U.SC. § 1981

47. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

48. Plaintiff is African American and is therefore a member of a protected group on the basis of her race. Plaintiff was retaliated against based on her protected complaints of unlawful race discrimination in violation of 42 U.S.C. § 1981.

49. In retaliation for Plaintiff making complaints regarding the Defendants race-based harassment and discrimination against Plaintiff, she was subjected to unsubstantiated disciplinary actions and pretextually terminated.

50. Upon information and belief, the Defendants' act of pretextually terminating Plaintiff was in direct retaliation by the Defendants for her engaging in the protected activity of making internal complaints of racial discrimination and a racially hostile work environment.

51. In failing to protect Plaintiff from the retaliatory acts of the Defendants' agents and employees,

the Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights set out under 42 U.S.C § 1981.

52. That the aforesaid conduct of Defendants, and their agents, violates the State and federal laws against retaliatory conduct and was, in fact, retaliatory in nature, and in violation of 42 U.S.C. § 1981.

53. The aforesaid conduct of the Defendants and their agents and employees is retaliatory and discriminatory in nature, and violates 42 U.S.C § 1981, which prohibits employers from retaliating against employees who engage in the protected activity of asserting complaints of unlawful discrimination.

54. Defendants' retaliatory and discriminatory conduct has caused Plaintiff to suffer substantial damages for embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, loss of benefits, and other pecuniary losses.

55. Due to the unlawful retaliation by Defendants and their agents and employees, Plaintiff is entitled to injunctive relief and/or civil damages, loss of consortium damages, front pay, together with interest thereof, and payment for lost wages.

## THIRD CAUSE OF ACTION
## RACE DISCRIMINATION IN VIOLATION OF THE SOUTH CAROLINA HUMAN AFFAIRS LAW

56. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

57. Plaintiff is African American, and is therefore, a member of a protected group on the basis of her race. By and through its agents, the Defendants have engaged in intentional discrimination in its treatment of the Plaintiff and/or terms and conditions of the Plaintiff's employment on the basis of her race.

58. Defendants, by and through their agents and employees, racially discriminated against Plaintiff and created a racially hostile work environment when Defendants: (1) reprimanded Plaintiff for completing and submitting shift-end reports, as directed Defendants' management (2) denied Plaintiff a promotional opportunity, despite Plaintiff's being well-qualified for the position to which she applied during the course of her employment with Defendant; (3) inequitably disciplined Plaintiff and subjected Plaintiff to a different set of protocols, rules, and treatment, compared her similarly Caucasian colleagues; (4) subjected Plaintiff to racially derogatory remarks made by her Caucasian coworker; (5) subjected Plaintiff to harassment through

relocating and misplacing Plaintiff's belongings; (6) rejected Plaintiff's training schedule requests, while accommodating such requests of other similarly situated Caucasian colleagues. Plaintiff's similarly situated Caucasian co-workers were never subjected to such treatment.

59. Defendant, by and through its agents, retaliated against Plaintiff when she made complaints relating to the mistreatment and racial discrimination, she endured in compliance with the anti-discrimination policies. Such retaliatory animus, in addition to Defendant's harassment and discriminatory actions, created a racially hostile work environment for the Plaintiff.

60. The aforesaid conduct of the Defendants is discriminatory in nature, and violates S.C. Code Ann. § 1-13-80, which prohibits employers from discriminating against individuals on the basis of their race.

61. Due to the unlawful discriminatory acts by Defendants and their agents and employees, Plaintiff is entitled to judgment against the Defendants and an award of back pay and other damages as are allowable by law.

## FOURTH CAUSE OF ACTION
## DISABILITY DISCRIMINATION IN VIOLATION OF THE SOUTH CAROLINA HUMAN AFFAIRS LAW

62. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

63.  On or about November 21, 2019, Plaintiff suffered a back injury.  Based on this injury, Plaintiff is a qualified individual with a disability as defined by S.C. Code Ann. §1-13-30, of the South Carolina Human Affairs Law.

64. As the result of her injury, Plaintiff was temporarily disabled and placed on light duty restrictions. During the period in which Plaintiff on light duty restrictions, Plaintiff was ostracized by Defendants' agents by and restricted from performing duties that were not prohibited by her light duty restrictions, under the guise of accommodating Plaintiff for her disability. Specifically, Defendants, by and through their agents and employees, discriminated against Plaintiff when Defendants: (1) delayed cross-training that other employees were allowed to undergo despite the fact that such training would not violate her light duty restrictions, (2) prohibiting Plaintiff from performing certain work duties that were in compliance with her light duty restrictions; (3) temporarily changed her work shift; (4) allowed General Manager Deidre Francis to closely monitor and restrict Plaintiff's overtime hours; and,

(5) pretextually terminated. Upon information and belief, other disabled employees, were not treated in this manner.

65. The aforesaid conduct of the Defendants is discriminatory in nature, and violates S.C. Code Ann. § 1-13-80, which prohibits employers from discriminating against individuals on the basis of their disability.

66. As a direct and proximate result of Defendants' unlawful work practices, Plaintiff has suffered loss of her job; loss of her income, loss of her health benefits; physical, emotional, and mental anguish; pain and suffering; and harm to Plaintiff's present and future economic opportunities.

67. Due to the unlawful discriminatory acts by Defendants and their agents and employees, Plaintiff is entitled to judgment against the Defendants and an award of back pay and other damages as are allowable by law.

## FIFTH CAUSE OF ACTION
## AGE DISCRIMINATION IN VIOLATION OF THE SOUTH CAROLINA HUMAN AFFAIRS LAW

68. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

69. Plaintiff is informed and believes that because of her age, 50 years old; she was excluded from participated in the Defendants' mentorship program and was ultimately terminated from her employment with Defendants on the basis of her age.

70. Plaintiff states it is her belief that the Defendant started the mentorship program and excluded Plaintiff from participating in such program, to prevent her from advancing in the company and in an effort to give preferential treatment to her younger counterparts.

71. Further, after Plaintiff's wrongful and pretextual termination, upon information and belief Plaintiff asserts that she was replaced by younger employee (under the age of 40) who participated in the Defendants' mentorship program.

72. Plaintiff is informed and believes that the reasons for Defendants' actions were because of her age in violation of the S.C. Code Ann. § 1-13-80, which prohibits employers from discriminating against individuals on the basis of their age.

73. Defendants' age discrimination of Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial embarrassment, humiliation, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, and other nonpecuniary losses.

74. Due to the aforesaid acts of Defendants, their agents, and their employees, Plaintiff is entitled to an award of back pay and other damages as are allowable by law.

## SIXTH CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE SOUTH CAROLINA HUMAN AFFAIRS LAW

75. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

76. Plaintiff was retaliated against based on her protected complaints of unlawful discrimination on the basis of her race, age, and disability in violation of S.C. Code Ann. § 1-13-80.

77. In retaliation for Plaintiff making complaints regarding the Defendants' harassment and discrimination against Plaintiff, she was subjected to unsubstantiated disciplinary actions and pretextually terminated.

78. Upon information and belief, the Defendants' act of pretextually terminating Plaintiff was in direct retaliation by the Defendants for her engaging in the protected activity of making internal complaints of race, age, and disability discrimination and a racially hostile work environment.

79. In failing to protect Plaintiff from the retaliatory acts of the Defendants' agents and employees, the Defendants acted with malice or reckless indifference to Plaintiff's protected rights set out under S.C. Code Ann. § 1-13-80.

80. That the aforesaid conduct of Defendants, and their agents, violates the State and federal laws against retaliatory conduct and was, in fact, retaliatory in nature, and in violation of South Carolina Human Affairs Law.

81. The aforesaid conduct of the Defendants, their agents, and employees is retaliatory and discriminatory in nature, and violates the South Carolina Human Affairs Law, which prohibits employers from retaliating against employees who engage in the protected activity of asserting complaints of unlawful discrimination.

82. Defendants' retaliatory and discriminatory conduct has caused Plaintiff to suffer substantial damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other pecuniary losses.

83. Due to the unlawful retaliation by Defendants and their agents and employees, Plaintiff is entitled to an award of back pay and other damages as are allowable by law.

## SEVENTH CAUSE OF ACTION
## BREACH OF CONTRACT

84. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

85. Defendants maintain promissory policies and procedures that states they are Equal Opportunity Employers, and also prohibit all forms of harassment and discrimination against employees on the basis of race, color, national origin, immigration status, sex (including pregnancy), disability religion, genetic information or age, or any other protected characteristic.

86. Defendants' Equal Opportunity policy specifically prohibits retaliation against any employee who complains of discrimination or harassment in the workplace.

87. Defendants also maintain a policy regarding Corrective Action policy which outlines a progressive disciplinary system for all employees.

88. Plaintiff and Defendants entered into a binding and valid contract whereby Defendants offered Plaintiff employment. Plaintiff accepted the offer of employment and agreed to fulfill the duties of her position in exchange for valuable consideration, her salary, and Defendants' guarantees that Plaintiff would be protected from racial discrimination, retaliation, and other unlawful or illegal acts as outlined in Defendants' policies and procedures.

89. At all times during the course of her employment, Plaintiff relied on the specific promises contained in Defendants' equal employment opportunity and corrective action policies.

90. Defendants breached their employment contract with Plaintiff as set forth in their own aforementioned policies and procedures by allowing continued discrimination, which is prohibited under their policies and procedures and are promises which Plaintiff relied upon.

91. Additionally, Defendants breached their employment contract with Plaintiff by failing to protect Plaintiff from race-, age-, and disability-based discrimination, a racially hostile work environment, and retaliation.

92. Defendants further breached their employment contract with Plaintiff by pretextually terminating Plaintiff without just cause, in retaliation for her internal complaints of racial discrimination.

93. Moreover, Defendants further breached their employment contract with Plaintiff by failing to following the progressive disciplinary system of their Corrective Action policy in its discharge of Plaintiff as they: (1) skipped steps in its progressive disciplinary process to terminate Plaintiff; (2) punished Plaintiff twice for the same alleged offense as Plaintiff suffered both a suspension and a termination for the alleged incident all in violation of Defendants' Corrective

Action policy; and, (3) deprived Plaintiff of handbook due process by not informing her of her grievance rights.

94. Defendants' conduct, by and through their agents and employees, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract at issue.

95. As a direct and proximate result of Defendants' breach, Plaintiff has suffered severe, emotional distress, and actual damages due to Defendants' failure to follow their own policies and procedures. Upon information and belief, Plaintiff is entitled to a judgment for actual damages against Defendants.

## EIGHTH CAUSE OF ACTION
## BREACH OF CONTRACT WITH FRADULENT INTENT

96. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

97. Plaintiff and Defendants entered into a binding contract whereby Defendants offered Plaintiff employment. Plaintiff accepted the offer of employment and agreed to fulfill the duties of her position in exchange for valuable consideration-- her salary, and Defendants' guarantees that Plaintiff would be protected from any violations as mandated by the Defendants' policies and procedures regarding employee terms and conditions of employment.

98. At all times during the course of her employment, Plaintiff relied on the specific promises contained in Defendants' employment handbook, and other internal policies and procedures governing Plaintiff's employment. Specifically, Defendants' mandatory and promissory policies assure that employees such as the Plaintiff would not be subject to unlawful discriminatory and retaliatory practices, and that Defendant would follow its progressive disciplinary system with respect to the Plaintiff.

99. Defendants failed to fulfill their obligations under the parties' employment contract and have breached the terms thereof by reason of an intentional design on their part to defraud Plaintiff of her employment.

100. Defendants, by and through their agents and employees, in furtherance of such intentional design, fraudulently breached their employment contract with Plaintiff and their own policies and procedures by: (1) failing to protect Plaintiff from the Defendants' retaliatory act of terminating the Plaintiff's employment after Plaintiff complained about the Defendant's unlawful and discriminatory treatment towards her; (2) pretextually terminating Plaintiff's

employment based on the unsubstantiated and pretextual grounds; (3) subjecting Plaintiff to discrimination on the basis of her age, disability, and race; (4) failing to follow Defendants' progressive disciplinary system; and, (5) fraudulently depriving Plaintiff of due process by not informing her of her grievance rights.

101. Defendants conduct, by and through their agents and employees, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract created.

102. Defendants sought out and fraudulently breached the employment contract between Plaintiff and Defendants by deliberately refusing to follow their handbook along with their other policies and procedures creating other expectations of performance for consideration in Plaintiff's employment.

103. Plaintiff has been maligned.

104. Defendants acted in a malicious, deliberate, intentional way, and with a deliberate indifference to the rights of Plaintiff.

105. Therefore, upon information and belief, Plaintiff is entitled to judgment for actual and punitive damages against Defendants on account thereof.

## NINTH CAUSE OF ACTION
### WORKERS' COMPENSATION RETALIATION

106. Plaintiff realleges and incorporates by reference every allegation contained in the proceeding paragraphs of this Complaint as though set forth herein.

107. In retaliation for Plaintiff's attempts to avail herself of the benefits and protections of the South Carolina Workers' Compensation Act, Defendants retaliated against her as indicated above by pretextually terminating Plaintiff.

108. Defendants' acts violate the South Carolina Workers' Compensation Retaliation Statute, South Carolina Annotated Section 41-1-80.

109. That upon information and belief, Plaintiff's termination was a proximate result of her having filed a Worker's Compensation claim against Defendants.

110. As a proximate result of the wrongful acts of Defendants herein alleged, Plaintiff has extreme anxiety, medical injuries, and physical and mental damages.

111. That upon information and belief, Plaintiff is entitled to reinstatement to her former position, and an award of all statutorily permitted damages to include lost wages, actual damages, compensatory damages, and other such damage awards as the Court deems fit.

## JURY TRIAL REQUESTED

112. Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Honorable Court declares that the Defendants' actions complained of herein violated the rights guaranteed to the Plaintiff and issue its judgment:

(1) Declaring the actions complained of herein illegal;

(2) In favor of Plaintiff and against Defendants for all causes of actions in an amount which is fair, just, and reasonable, and for compensatory damages;

(3) Issuing an injunction enjoining the Defendants, their agents, employees, successors, attorneys, and those acting in concert or participation with the Defendants, and at its direction from engaging in the unlawful practices set forth herein and shown to be in violation of Section 1981 and any other violations;

(4) Awarding Plaintiff actual, punitive, statutory, and compensatory damages for each cause of action contained herein, which the jury should find appropriate as a result of the Defendants' unlawful discriminatory actions taken as the result of racial discrimination and a racially hostile work environment, retaliation, including mental anguish, pain and suffering, harm to Plaintiff's economic opportunities, any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits, and retirement benefits;

(5) Awarding Plaintiff actual, punitive, and compensatory damages for the causes of action herein that a jury and this Court find appropriate for Plaintiff's claims of Breach of Contract, and Breach of Contract With Fraudulent Intent, as a result of the Defendants' failure to act to protect Plaintiff from adverse effects of Plaintiff being in their employ. These damages include mental anguish, pain and suffering, harm to Plaintiff's economic opportunity, as well as back pay, front pay, travel hardships and expenses, and lost future earnings with cost of living adjustments, prejudgment interest, fringe benefits and retirement benefits;

(6) Awarding Plaintiff lost wages and any other damages that the Court finds appropriate for Plaintiff's claim of Workers' Compensation Retaliation;

(7) Awarding Plaintiff lost wages and any other damages that the Court finds appropriate for Plaintiff's claims of Race Discrimination, Age Discrimination, Disability Discrimination and Retaliation in Violation of the South Carolina Human Affairs Law;

(8) Awarding Plaintiff actual damages;

(9) Awarding Plaintiff her costs and expenses in this action, including reasonable attorney's fees, and other litigation expenses; and,

(10)       Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

Respectfully submitted:

By:  _s/Donald Gist
Donald Gist (7178)
dtommygist@yahoo.com
Imani Newborn (12150)
imaninewborn.gistlawfirm@gmail.com
Erica McCrea (13493)
ericamccrea.gistlawfirm@gmail.com
*GIST LAW FIRM, P.A.*
4400 North Main Street
Columbia, South Carolina 29203
Telephone: (803) 771-8007
Fax: (803) 771-0063
*Attorneys for Plaintiff Bridgette Williams*

June 24, 2021